UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| DALE BRUCE STRINGFELLOW, | ) |
| *Plaintiff,* | ) ) ) No. 4:23-cv-9 |
| v. | ) ) Judge Collier |
| XP SERVICES, INC., | ) Magistrate Judge Lee ) |
| *Defendant.* | ) |

# **M E M O R A N D U M**

Before the Court is a motion by Defendant, XP Services, Inc., for leave to amend its answer under Rule 15 of the Federal Rules of Civil Procedure to add an affirmative defense. (Doc. 64.) Plaintiff, Dale Bruce Stringfellow, responded in opposition. (Doc. 69.) Because Defendant has not shown good cause to allow an amendment after the deadline for amending the pleadings, the Court will **DENY** Defendant's motion (Doc. 64).

**I. BACKGROUND**

Plaintiff sued Defendant on March 23, 2023, asserting causes of action for breach of contract, quantum meruit, and unjust enrichment. (Doc. 1.) Plaintiff served Defendant with process on April 11, 2023. (Doc. 7 at 3.) On May 4, 2023, the Court ordered that within fourteen days, Defendant must respond to the complaint, Plaintiff must move for entry of default under Rule 55(a), or Plaintiff must show cause why the case should not be dismissed under Rule 41(b). (Doc. 8.) Defendant answered the Complaint fourteen days later, on May 18, 2023. (Doc. 11.)

Factually, the complaint alleges the parties entered an oral contract with each other in 2018 to bid for a certain government contract, known as the 29 Palms Contract, "to provide foreign adversary aircraft support" for training exercises by the Marine Corps Air Ground Combat Center

(the "Combat Center"). (*Id.* at 2 & ¶¶ 6, 10, 47.) Under the terms of the alleged oral contract, Defendant was to act as the prime contractor and Plaintiff was to act as the subcontractor, supplying his "two Soviet-era, Russian-built helicopters, namely Mi-24 Hinds (the 'Hinds')," as well as "pilots, mechanics, and other general labor to perform the 29 Palms Contract." (*Id.* ¶¶ 5, 10.) The 29 Palms Contract was for one year, with four possible one-year renewals. (*Id.* ¶ 6.)

Defendant won the 29 Palms Contract. (*Id.* ¶ 30.) The complaint alleges Defendant then breached its oral contract with Plaintiff by using a different subcontractor to provide aircraft and pilots to perform training exercises under the 29 Palms Contract. (*Id.* ¶¶ 43, 50.) Specifically, the complaint alleges that after Defendant won the 29 Palms Contract, Defendant's owner and operator, Rodney Allison, told Plaintiff that performance of the 29 Palms Contract would be delayed because of a delay in obtaining facility security clearances for Allison. (*Id.* at 2, 4; *see also id.* ¶ 40.) The complaint further alleges Defendant instead began performing the 29 Palms Contract with a subcontractor other than Plaintiff without informing Plaintiff or getting Plaintiff's consent to the change, which Plaintiff later learned through a chance encounter with a pilot in 2020. (*Id.* ¶ 43.)

Defendant's answer denies the existence of an enforceable contract between it and Plaintiff, denies the breach of any such contract, and asserts "that the delays in starting work were caused by [Plaintiff] Stringfellow not obtaining the required security clearances." (Doc. 11 ¶¶ 40, 47, 50.) The answer also asserts various affirmative and other defenses, not including the defense of impossibility of performance. (*See id.* at 7–9.)

The Court held a telephonic scheduling conference on September 21, 2023. (Doc. 23.) Based on discussions with the parties during the conference about the amount of time they would need to prepare their respective cases and the parties' agreement with the dates to be set, the Court

set a discovery deadline of October 31, 2024, and a trial date of March 10, 2025. (*Id.* ¶¶ 5(f), 8.) The Court also set a deadline to amend the pleadings of forty-five days from the September 26, 2023, entry of the scheduling order, or November 10, 2023. (*Id.* ¶ 6(a).) The Court set the amendment deadline as it did "[b]ecause the parties did not indicate a preferred deadline for joinder of parties or amendment of the pleadings at the scheduling conference."[1] (Doc. 23 ¶ 6(a).)

On October 11, 2024, Plaintiff filed a motion to extend the discovery deadline and all related deadlines other than the trial date by six weeks to allow the parties to complete depositions. (Doc. 31.) Defendant opposed the motion to extend and filed a motion for a protective order regarding the scheduling of depositions. (Docs. 32, 35.) On October 21, 2024, Magistrate Judge Susan K. Lee ordered the parties to confer by telephone to attempt to resolve the dispute underlying the motions. (Doc. 37.) The Magistrate Judge held a hearing on October 24, 2024, during which she terminated both motions as moot because the parties had "reached an agreement on dates for taking depositions outside the close of the discovery period," among other agreements. (Doc. 45 [Minute Order].)

On January 3, 2025, Defendant filed a motion for summary judgment[2] relying in part on the affirmative defense of impossibility of performance of the alleged oral contract between it and

---

[1] The notice of scheduling conference issued on June 27, 2023, encouraged counsel "to obtain a sample copy of the [Court's] form scheduling order and review the judicial preferences from the district court's web page at ***www.tned.uscourts.gov*** before attending the conference." (Doc. 14 at 1 (emphasis in original).) The Court's form scheduling order indicates that a forty-five day amendment deadline will be set if the parties do not ask for a different deadline. *See* "Scheduling Order – Civil," *available at* https://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge.

[2] Defendant had previously filed a redacted motion for summary judgment and redacted supporting documents, along with a motion for leave to file unredacted versions of the documents under seal. (Docs. 51, 53, 54.) The Magistrate Judge denied the motion for leave to file the documents under seal, after which Defendant refiled its documents in the public record. (Docs. 55–57.) The Court then directed that the original motion for summary judgment be terminated

3

Plaintiff. (Doc. 56.) Plaintiff responded in opposition to the motion for summary judgment on January 25, 2025, arguing in part that Defendant had waived the impossibility defense by failing to raise it in the answer. (Doc. 61 at 19–21.) On January 30, 2025, Defendant filed its pending motion for leave to amend its answer to assert the defense of impossibility. (Doc. 64.) Plaintiff responded in opposition to the motion to amend on February 13, 2025. (Doc. 69.)

## II. STANDARD OF REVIEW

Once twenty-one days have passed from the filing of a defendant's answer, the defendant may amend that answer "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Relevant factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003).

However, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In addition, a motion to extend a scheduling-order deadline that has already expired may implicate the excusable-neglect requirement of Rule 6(b)(1)(B): "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 240–41 (E.D. Ky. 2018) (discussing ambiguity as to interplay between Rule 16(b)(4) and Rule 6(b)(1)(B)).

---

and that the parties' briefing schedule would run from the filing of the unredacted motion for summary judgment. (Doc. 60.)

## III. DISCUSSION

Defendant asks for leave to amend its answer because it claims it only determined it had an impossibility defense "recently, during discovery that did not begin in earnest until late-October 2024." (Doc. 65 at 1.) According to Defendant,

> [t]hrough this discovery process, it was around November or December of 2024 when XP's defense was fully apparent. Prior to that point, it was not immediately clear whether the lack of [a security clearance] was a lapse of a condition precedent or subsequent, a formation issue, a failure of Plaintiff's own doing which would excuse XP's performance, or another defense entirely.

(*Id.* at 5.) The specific discovery Defendant identifies from November and December of 2024 are Plaintiff's deposition of Defendant's principal, Allison, in November 2024, and Plaintiff's deposition of the independent contractor who wrote Defendant's bid for the 29 Palms Contract in December 2024. (*Id.*)

Defendant argues the factors relevant to allowing an amendment support granting the motion because delay alone is not sufficient to deny leave to amend, Defendant did not act in bad faith, it has not repeatedly failed to amend, Plaintiff will not suffer prejudice, and the amendment is not futile. (*Id.* at 7–8.) Defendant argues good cause exists for a late amendment because,

> when the time allowed for amendments had closed, the parties had not engaged in *any* discovery outside of initial disclosures. They would not go on to take a deposition until 11 months after this deadline and would not fully flush out the facts surrounding the defense until the recent string of party and nonparty depositions.

(*Id.* at 9 (so in original).) Defendant also asserts that, "[a]t th[e] time of the pleadings, XP and [its] counsel had less than one day to respond to the Complaint before a default was entered against it." (*Id.*) Defendant acknowledges that "[i]t did know that it was never issued [the relevant security clearance] and has generally known that this may have excused the performance of any alleged contract." (*Id.* at 7.)

5

Plaintiff opposes the motion to amend. (Doc. 69.) He argues he will suffer severe prejudice if Defendant is allowed to add a defense of impossibility based on Defendant's own alleged failure to obtain a security clearance, because Defendant has asserted from the filing of its answer until now that the reason Defendant did not use Plaintiff for the 29 Palms Contract was *Plaintiff's* failure to obtain a security clearance, not Defendant's failure to do so. (*Id.* at 6.) Plaintiff asserts that he knew all along that he himself did not need a security clearance to perform the 29 Palms Contract, and so he did not pursue discovery on the issuance or non-issuance of security clearances related to the 29 Palms Contract. (*Id.* at 2.) Plaintiff asserts that if he had known Defendant would now rely on the Combat Center's failure to give *Defendant* a security clearance, Plaintiff would have pursued discovery from the Combat Center to explore and possibly disprove Defendant's assertion that Defendant did not receive a security clearance and that the failure was through no fault of Defendant's. (*Id.* at 6–7.) Plaintiff claims that he cannot seek such discovery now because Defendant did not make the assertion in question until thirteen weeks after the discovery deadline passed. (*Id.*)

Plaintiff also attacks the credibility of Defendant's argument that it only recently uncovered the existence of an impossibility defense through discovery, because the relevant fact—that Defendant did not receive a security clearance—has always been within Defendant's knowledge. (*Id.* at 7–8.)

Defendant has not shown good cause for what would be an exceedingly late amendment of its answer. The basic facts underlying Defendant's impossibility defense have been in Defendant's knowledge since before the complaint was filed. As Defendant acknowledges, "[i]t did know that it was never issued [the relevant security clearance] and has generally known that this may have excused the performance of any alleged contract." (Doc. 65 at 7.) This is confirmed by the fact

6

that, according to the motion to amend, it was during the depositions of Allison and of Defendant's bid-writing subcontractor that it became "fully apparent" that Defendant had an impossibility defense based on its own alleged failure to receive a security clearance from the Combat Center. (*Id.* at 5.)

Moreover, Plaintiff's complaint contained allegations that it was Defendant who had not received the required security clearance, thereby allegedly preventing Defendant from using Plaintiff to perform the 29 Palms Contract. The "Overview" section of the complaint alleges that "there was to be considerable delay, as represented by Allison, in securing *his* facility security clearances necessary to perform the 29 Palms Contract." (Doc. 1 at 4 (emphasis added).) Paragraph 40 of the complaint states in full as follows:

> For more than a year following the award of the 29 Palms Contract, XP Services represented to Stringfellow that the delay in starting work under the contract resulted from delays in obtaining the necessary facility security clearances. On February 4, 2020, Allison forwarded to Stringfellow a supposed email chain between Allison and various persons with the [Combat Center] contracting office in which XP Services appeared to be pursuing the necessary security clearances while [Combat Center] personnel w[]ere not providing helpful answers.

(Doc. 1 ¶ 40.) In answer to this paragraph, "Defendant admits that the delays in staring work were caused by *Stringfellow* not obtaining the required security clearances and that Defendant forwarded an email chain to Stringfellow, the substance of which speaks for itself. The remaining averments contained in paragraph 40 are denied." (Doc. 11 ¶ 40 (emphasis added).) In the next paragraph of the complaint, Plaintiff alleges he emailed Allison on July 31, 2020, about when Plaintiff's aircraft would be needed for the 29 Palms Contract, to which Allison responded, "At this point we are all very frustrated. Sam reminds them every month about the need for the Facility Clearance. Unfortunately now they claim Covid for the delay. That said, do not turn down other work waiting on these Marines to issue a single piece of paper!" (Doc. 1 ¶ 41.) Defendant admitted

7

Case 4:23-cv-00009-CLC-MJD   Document 71   Filed 02/20/25   Page 7 of 9   PageID #: 1761

the allegations in this paragraph. (Doc. 11 ¶ 41.) Both paragraphs of the complaint thus contain sufficient allegations to put Defendant and Defendant's counsel on notice that Plaintiff believed it was Defendant who had failed to obtain security clearances and that Plaintiff considered this relevant to his case.

The timing of Defendant's motion is also significant. Defendant filed its motion to amend more than fourteen months after the deadline to amend, three months after the deadline to complete discovery, and only five and a half weeks before trial. (*See* Doc. 23 ¶¶ 6(a), 5(f), 8.) The facts underlying the proposed amendment have always been within Defendant's knowledge and they were also alleged in Plaintiff's complaint. Defendant has not shown good cause to allow so late an amendment of the answer under these circumstances.

To excuse its original failure to assert the defense of impossibility, Defendant states that "[a]t th[e] time of the pleadings, XP and [its] counsel had less than one day to respond to the Complaint before a default was entered against it."[3] (Doc. 65 at 9.) This might have constituted good cause to allow a late amendment a year ago, but it does not do so now.

Defendant also argues good cause exists for an amendment after the deadline because, "when the time allowed for amendments had closed, the parties had not engaged in *any* discovery outside of initial disclosures" and "would not go on to take a deposition until 11 months after this deadline." (*Id.* (emphasis in original).) The relevance of discovery delays to good cause for an amendment is weak where the facts allegedly "discovered" were within Defendant's knowledge

---

[3] Defendant's characterization is inaccurate. Even if Defendant did not engage counsel until the May 14, 2023, deadline in the Court's order to show cause (*see* Doc. 65-1 [Decl. of Jonathan Cole] ¶ 2), Defendant itself had been in possession of the complaint since its service on April 11, 2023. (*See* Doc. 7.) Also, the relevant deadline was for Defendant to answer, or for Plaintiff to file a motion asking the Clerk of Court to enter a default as a preliminary step to a motion for default judgment as specified in the Federal Rules of Civil Procedure, or for Plaintiff to show why the case should not otherwise be dismissed. (Doc. 8.)

8

from the beginning and alleged in the complaint. Defendant's argument also overlooks the fact that the Court set the deadlines in this case based on the representations and requests of the parties. Defendant's counsel's knowledge of the haste with which he had to prepare the answer might have pointed in favor of seeking a longer deadline to amend, but counsel did not do so. Moreover, the parties were free to begin discovery at any time after their discovery conference pursuant to Rule 26(f). Fed. R. Civ. P. 26(d). That Defendant did not do so was not the fault of the scheduling order.

IV. **CONCLUSION**

Because Defendant has not shown good cause for moving to amend his answer after the deadline for amendments has expired, the Court will **DENY** Defendant's motion for leave to amend its answer (Doc. 64).

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**